SMITH, Judge.
Freedom Savings and Loan Association (FSLA) appeals a final summary judgment denying relief in its foreclosure action. Because genuine issues of material fact remain to be litigated, we find it was error to grant summary final judgment in favor of the Hortons based upon their defense that they were bona fide purchasers for value without notice of FSLA’s mortgages.
Reduced to the bare essentials, the facts are that in 1976, FSLA took two mortgages on Lots 6 and 7 of the Lake Charlene subdivision, upon which four quadruplexes are located on each half of each lot. In 1980, FSLA released the eastern portions of both lots from the respective mortgages. The 1976 mortgages remained on the western portions of Lots 6 and 7. Later, in 1981, FSLA took two new mortgages on *1336 the eastern portions of Lots 6 and 7 for a total of four separate mortgages held by FSLA. In 1984, the western portions of Lots 6 and 7 were sold and the corresponding mortgages were to be satisfied. The new mortgagee for these two parcels was to be First Southern Federal Savings and Loan Association of Mobile (now Altus Bank). Through error, the loan numbers of the two mortgages on the eastern portions of Lots 6 and 7 were substituted and these mortgages were cancelled of record, which resulted in FSLA losing its valid liens on the two eastern parcels. At the same time, First Southern, instead of holding first mortgages on the western portions of Lots 6 and 7, had two second mortgages of record. When the error was discovered, Lawyers Title Insurance Corporation (LTIC), the closing agent, sought to have FSLA release its two liens on the western portions of Lots 6 and 7. According to FSLA’s complaint, it was erroneously informed by LTIC that if it executed the releases, it would still have valid liens on the eastern portions of Lots 6 and 7.
Though FSLA held the mortgages on the western portions of Lots 6 and 7, LTIC received the releases of the two liens from Freedom Mortgage Company, a wholly owned subsidiary of FSLA. These documents, purporting to release the liens in question, recite that Freedom Mortgage Company is the owner of the mortgages and they are signed:
FREEDOM MORTGAGE COMPANY
By: Larry W. Hunter, Sr. Its Ex. Vice President
It is alleged that no further payments were made on the two 1976 mortgages on the western parcels after April 1, 1986. There are representations in the record that payments similarly ceased on the 1981 mortgages on the eastern parcels. Subsequently, the Hortons purchased all of Lots 6 and 7.
Thereafter, FSLA filed suit against the Hortons, among others, seeking to foreclose its two 1976 mortgages on the western parcels. FSLA contends that the releases executed by Freedom Mortgage Company are a nullity. FSLA sought alternative relief, in the event the trial court would not foreclose the 1976 mortgages, asking that the two 1981 mortgages on the eastern parcels of Lots 6 and 7 be reinstated. FSLA alleges that if the trial court does permit it to foreclose the two 1976 mortgages, that the trial court can reestablish the 1981 mortgages on the eastern parcels and subrogate First Southern to the rights of the mortgagee.
In this appeal, FSLA contends it would be unjust for the Hortons or their predecessors in title, or both, to have acquired title to four parcels, each of which was subject to a separate mortgage in favor of FSLA, upon paying off only two of them; that there was no consideration given for the releases executed by Freedom Mortgage Company on the western portions of Lots 6 and 7; and that said releases were executed based on incorrect information furnished to FSLA from LTIC. The question of the validity of these releases is still before the lower court where First Southern and LTIC are parties. FSLA maintains that it is irregular to grant the Hortons final summary judgment when this ruling might be contrary to the ruling eventually made as to the other defendants.
In response, the Hortons contend that they are bona fide purchasers for value and took title free and clear of any alleged lien by FSLA, regardless of whether there was a mutual mistake and regardless of whether there was a failure of consideration relating to the releases.
However, to be a bona fide purchaser there must be an absence of notice, either actual or constructive, of a prior interest in the property:
Notice of an earlier interest that will be sufficient to charge a subsequent purchaser with knowledge of its existence may be either direct information of a prior right, or it may take the form of knowledge of facts from which actual knowledge may be inferred. If, in the investigation of a title, a purchaser with *1337 common prudence would be apprised of another right, notice of that right is presumed, as a matter of implied actual notice-.
However, notice which would preclude protection as a bona fide purchaser may also be constructive. Notice of this kind is imputed to certain persons under the recording laws. Matters relating to title instruments and records thereof are often enough to give to a purchaser of realty constructive notice of an outstanding interest therein. 44 Fla.Jur.2d, Real Properties, Sales and Exchanges, § 275 (1984).
We agree with FSLA that there remain material issues of fact in this ease regarding whether the Hortons are entitled to maintain their bona fide purchaser defense. It is clear that the releases in question were signed by Freedom Mortgage Company, while the ownership of the mortgages by FSLA was a matter of public record. The record does not demonstrate that any inquiry was made by the appellees to find out if Freedom Mortgage Company was authorized to execute releases on behalf of FSLA or why the releases recited that Freedom Mortgage Company was the owner of the mortgages. Appellees do not contend and the record does not show that there was an assignment to Freedom Mortgage Company.
The Hortons respond that notice is not an issue in this case because the record demonstrates as a matter of law and as a matter of fact that Freedom Mortgage Company was authorized to act as agent for FSLA in signing the releases. Without unduly lengthening this opinion by reciting the considerable facts bearing upon this issue, we simply note that the facts set forth in the answers to interrogatories and the affidavits submitted by the Hortons do not conclusively demonstrate that Freedom Mortgage Company was authorized to act as agent for FSLA in signing these releases or that FSLA knowingly permitted Freedom Mortgage Company to sign as agent. Further, there remains an issue whether Freedom Mortgage Company signed as agent, since the releases have all the indicia of Freedom Mortgage Company signing as principal, not as agent for FSLA. See 2 Fla.Jur.2d, Agency and Employment, § 32 (1977). Because these and possibly other issues must be resolved in determining the Hortons’ status as bona fide purchasers, we agree with FSLA that summary judgment was improper.
A summary judgment should only be granted in the complete absence of any genuine issues of material fact and, if the existence of such issues or the possibility of their existence is reflected in the record, or the record raises even the slightest doubt in this respect, the summary judgment must be reversed. Braidi Trading v. Anthony R. Abraham Enterprise, 469 So.2d 955, 956 (Fla. 3d DCA 1985) (question of individuals acting as agents for corporate defendant in signing pertinent documents was a question of fact precluding summary judgment on agency issue).
REVERSED and REMANDED for further proceedings.
THOMPSON and MINER, JJ., concur.